UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK A. PERELMAN,

                     Plaintiff,

         -against-

VISA USA, INC.,

                     Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/12/2026
```

24 Civ. 9793 (AT) (KHP)

**ORDER ADOPTING
REPORT AND
<u>RECOMMENDATION</u>**

ANALISA TORRES, District Judge:

Plaintiff *pro se*, Mark A. Perelman, brings this action against Visa USA, Inc. ("Visa") alleging that Visa discriminated against him on the basis of race, national origin, religion, sex, sexual orientation, and disability when it did not hire or interview him for 16 different positions, in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), the Americans with Disability Act ("ADA"), and the New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL," respectively). *See generally* First Am. Compl. ("FAC"), ECF No. 29-1. Visa moves to dismiss the complaint under Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6), and to strike certain portions of the FAC as irrelevant and prejudicial under Rule 12(f). *See* Mot. at 1, ECF No. 32; *see also* Mem., ECF No. 33.

Pursuant to an order of reference, the Honorable Katharine H. Parker issued a report and recommendation (the "R&R") on Visa's motion. *See* Order of Reference, ECF No. 9; R&R at 49–50, ECF No. 51. The R&R recommends that Visa's motion to dismiss be:

(1) Granted with prejudice as to: (i) Plaintiff's disparate treatment and disparate impact claims based on sexual orientation under Title VII, (ii) Plaintiff's disparate treatment and disparate impact claims under the ADA, and (iii) Plaintiff's hostile work environment claim under Title VII, NYSHRL, and NYCHRL;

(2) Granted without prejudice as to: (i) Plaintiff's disparate treatment claims for race, national origin, sex and religion under Title VII, (ii) Plaintiff's disparate impact claims

under Title VII, (iii) Plaintiff's disparate treatment claims under NYSHRL and NYCHRL, and (iv) Plaintiff's claims under 42 U.S.C. § 1981; and

(3) Denied as to Plaintiff's retaliation claims under Title VII, NYSHRL, and NYCHRL.

*See* R&R at 49–50. It also recommends granting in part and denying in part Visa's motion to strike. *See id.*

Before the Court are Plaintiff's timely objections to the R&R, *see* Objs., ECF No. 58, and Visa's response, *see* Resp., ECF No. 63. For the reasons stated below, the Court ADOPTS the R&R except as follows: (1) Plaintiff's federal sexual orientation and discrimination claims are dismissed without prejudice, and (2) the Court strikes only the following allegations from Plaintiff's FAC: paragraphs 61–67, 76, 78 & n.29, 164 (in part), 167, 219–20, 223, and 227.

## BACKGROUND[1]

I.       Factual Background

Between 2021 and 2024, Plaintiff applied to 16 positions at Visa, a "payment technology company." FAC ¶¶ 6–7. Visa did not interview or hire Plaintiff for any role. *Id.* ¶¶ 7, 20. Plaintiff alleges that Visa failed to hire him because, "being a disabled, gay, Jewish male of Eastern European descent" with HIV, he "did not conform to Visa's [Diversity, Equity, and Inclusion ('DEI')] or majority hires." *Id.* ¶ 7; *see also id.* ¶¶ 21, 65, 94.

Plaintiff is a licensed Chartered Financial Analyst ("CFA"), with an MBA from Yale University. *Id.* ¶¶ 7, 231. He states that he has "twelve years of experience in finance and

---

[1] The Court presumes familiarity with the facts and procedural history of this action as detailed in the R&R and, therefore, summarizes only the key facts here. *See* R&R at 2–11. For purposes of Visa's motion, the Court accepts as true all non-conclusory factual allegations in the FAC, drawing all reasonable inferences in Plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

technology" and has "excelled academically and professionally, including passing all three CFA exams on his first attempt." *Id.* ¶ 231; *see* ¶¶ 232–48 (outlining his professional experience).

Plaintiff's complaint is based on Visa's alleged "DEI initiatives," which he claims "overlook applicants with intersecting, less visible marginalized identities," such as "gay, disabled Jewish applicants." *Id.* ¶ 90.  These initiatives include establishing a "dedicated team for recruiting Black talent," requiring "all [interview] candidate slates to be diverse," tying quarterly business reviews to "race and gender metrics," and "prioritizing hiring in majority-Black Atlanta." *Id.* ¶ 47. In a 2020 press release, Visa announced goals to increase the number of "underrepresented" vice presidents or higher-level employees by 50% within three years.  *Id.*; *see also id.* ¶ 65.  Plaintiff alleges that "White representation at Visa fell from 40% in 2020 to 35% in 2023," and White male representation "dropped from 23% to under 20%." *Id.* ¶ 9.

Visa "does not use self-reported identities, such as disability and religion, in hiring," and "no one involved in the recruiting process, such as recruiters or hiring teams, has access to" this information.  *Id.* ¶ 87.  Plaintiff nonetheless claims that "although his application and resume did not explicitly mention his race, religion, national origin, sexual orientation, HIV status, or sex, that the unnamed decisionmakers knew at the very least he [was] a White, Jewish male with an Eastern-European background based on his first and last[] name, review of his social media accounts (which he speculates were reviewed), and resume, which included the universities he attended." R&R at 7 (citing FAC ¶¶ 100 n.38, 101).

Plaintiff includes two tables in his complaint: one indicating who he believes was hired for each of the 16 positions, coupled with his assessment of their race, religion, gender, and sexual orientation, *see* FAC ¶¶ 74 n.26, 170–80; *see also* R&R at 4 (reproducing chart), and a second setting forth information from LinkedIn searches about some of the alleged successful candidates'

educational and professional backgrounds, alongside information about his own qualifications, *see* FAC ¶¶ 112, 140; *see also* R&R at 5–7 (reproducing chart).

Plaintiff's complaint also identifies Visa's stated reasons for rejecting him, including that he failed to meet the roles' basic qualifications or that Visa determined he was not the most qualified candidate. *See, e.g.*, FAC ¶ 112 ("For 3 out of 16 applications, Visa's Statement deemed Plaintiff as 'unqualified' because he did not meet basic qualifications.").

In addition to his failed job applications, Plaintiff alleges that he "was excluded" from multiple Visa grant and accelerator programs. He states that he was excluded from "IFundWomen," a Visa program that supports, at least in part, "[b]lack women-owned small businesses," *id.* ¶¶ 38–39, 56, as well as "She's Next," another grant program targeted at women, *id.* ¶ 56. He does not claim, however, that he applied to either program or otherwise met the relevant application criteria. *See generally id.* Additionally, he acknowledges that he was eligible for the "Visa Everywhere Initiative," but admits that he did not apply for the program and does not allege that he met its criteria. *Id.* ¶ 56.

II.       Procedural History

On March 13, 2024, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), claiming that Visa discriminated against him on the basis of race, sex, and religion. *See* Form FAC at V., ECF No. 29; EEOC Charge, ECF No. 34-2. Visa filed a response with the EEOC, which Plaintiff refers to as Visa's "Statement" in his complaint, *see* R&R at 9; FAC ¶ 120. On August 19, 2024, Plaintiff submitted a rebuttal to the EEOC, supplementing his charge by "explicitly identifying sexual orientation and disability as additional bases for his claims." *Id.* ¶ 21 n.2. On September 19, the EEOC provided Plaintiff with notice of his right to

sue. *See* Form FAC at V. Plaintiff brought this action within 90 days of receiving his right to sue letter. *See* Compl., ECF No. 1.

After careful consideration, Judge Parker issued a thorough and well-reasoned R&R, recommending granting in part and denying in part Visa's motion to dismiss and motion to strike. *See* R&R at 50. On January 20, 2026, Plaintiff filed his objections, and on February 20, Visa responded. *See* Objs.; Resp.

## DISCUSSION

I. <u>Legal Standard</u>

A. Motion to Dismiss

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id*. The Court must draw all reasonable inferences in the non-movant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "In considering a motion to dismiss for failure to state a claim, 'the district court is normally required to look only to the allegations on the face of the complaint.'" *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

B. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Whether to grant such a motion is within the district court's discretion. *See E.E.O.C. v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167,

170 (E.D.N.Y. 2004). Motions to strike are disfavored, however, and courts "should not tamper with the pleadings unless there is a strong reason for doing so." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). To prevail on such a motion, the movant must show: "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (citation omitted).

C. Standard of Review

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court may adopt those portions of the R&R to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (citation omitted). An R&R is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted); *see also Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

A proper objection to an R&R must be timely and specific. "In order to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025) (quoting *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017)). Additionally, an objection "generally may not raise new arguments not previously made before the magistrate judge." *Id.* at 359. When a party properly objects to an R&R, the district court reviews those arguments *de novo*. *Id.* at 361.

6

A *pro se* party is "generally accorded leniency," and their submissions are "construed to 'raise the strongest arguments they suggest.'" *Lanier v. Capra*, No. 21 Civ. 9307, 2023 WL 6795441, at *3 (S.D.N.Y. Oct. 13, 2023) (quoting *Milano v. Astrue*, No. 05 Civ. 6527, 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008)). "Nonetheless, even a *pro se* party's objections to a [r]eport and [r]ecommendation must be specific and clearly aimed at particular findings in the magistrate [judge's] proposal." *Pinkney v. Progressive Home Health Serv.*, No. 06 Civ. 5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (internal quotation marks and citation omitted).

II.    Plaintiff's Objections

A. Exhaustion and Timeliness

Plaintiff objects to the R&R's conclusion that his federal sexual orientation and disability discrimination claims are unexhausted and time-barred. *See* Objs. ¶¶ 2–6; R&R at 13–21. In analyzing Title VII or ADA claims, the Court considers "only those acts that occurred within 300 days of [the EEOC charge] and were . . . properly exhausted." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). The R&R concluded that neither the federal sexual orientation nor the federal disability discrimination claims "were raised with the EEOC within 300 days of the alleged adverse employment actions (*i.e.*, the decisions not to hire Plaintiff)," and that, therefore, both claims were unexhausted and time-barred. *See* R&R at 13, 15–16.

Plaintiff argues that: (1) the continuing violation doctrine applies to his claims, *see* Objs. ¶ 2; (2) his reference to Visa's commitment to increase "underrepresented staff" in his EEOC charge should have prompted an investigation into claims of sexual orientation and disability discrimination, *id.* ¶ 3; (3) his August 2024 rebuttal letter related back to his original charge, *id.* ¶ 4; (4) the last date of discrimination is disputed, *id.* ¶ 5; and (5) his parallel state proceeding

before the New York State Division of Human Rights ("NYSDHR") sufficiently notified the EEOC of his claims. The Court reviews *de novo* each objection.

First, a failure to hire is a discrete act, and therefore, the continuing violation doctrine is inapplicable. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as . . . refusal to hire are easy to identify."); *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 157 (2d Cir. 2012) (holding that discrete acts "which fall outside the limitations period [] cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period"). The Court overrules this objection.

Second, Plaintiff's federal sexual orientation and disability discrimination claims are not reasonably related to his EEOC charge, which raised only race, religion, and sex discrimination claims. *See* R&R at 15; EEOC Charge at 2. As Visa correctly argues, "[s]imply claiming that a company is seeking to increase its hiring of 'underrepresented' people would not reasonably lead the EEOC to investigate claims of sexual orientation and disability discrimination when three other discrete types of discrimination are already listed." Resp. at 5.

As to his sexual orientation claim, "[b]ecause an employer may discriminate on the basis of sex in numerous ways . . . , and because Plaintiff's EEOC [c]harge does not mention sexual orientation *at all*, . . . Plaintiff's sexual orientation claim is not reasonably related to his sex discrimination claim." *Hamilton v. Siemens Healthcare Diagnostic, Inc.*, No. 23 Civ. 7408, 2025 WL 863572, at *6 (S.D.N.Y. Mar. 18, 2025) (emphasis in original) (internal citations and quotations omitted). As to his disability discrimination claim, Plaintiff's EEOC charge provides no facts that would put the EEOC on notice of a disability discrimination claim under the ADA. *See* EEOC Charge; *Espinoza v. Port Auth. of New York & New Jersey*, No. 19 Civ. 258, 2022 WL

623809, at *6 (S.D.N.Y. Mar. 2, 2022) (holding that disability discrimination claims under the ADA were not exhausted where the EEOC charge was limited to Title VII claims based on race, ethnicity, and color).  The Court, therefore, overrules Plaintiff's second objection.

Third, Plaintiff's August 2024 rebuttal submission to the EEOC does not alter the Court's conclusion.  As the Second Circuit has explained, "unsworn letters sent to the EEOC describing additional claims of discrimination unrelated to the claims described in the EEOC charge cannot enlarge the scope of the original charge."  *Littlejohn*, 795 F.3d at 323 (alteration adopted) (internal quotations and citations omitted); *see* R&R at 20–21.  For the reasons explained above, Plaintiff's sexual orientation and disability discrimination claims are not reasonably related to his racial, religious, and sex discrimination claims.[2]  Therefore, the Court overrules this objection.

Fourth, the R&R did not, as Plaintiff claims, resolve any factual dispute as to the date of Plaintiff's rejection.  *See* Objs. ¶ 5.  Rather, the R&R correctly observed that "Plaintiff does not specify the exact dates on which he applied for various jobs at Visa or the dates he learned his application had been denied."  R&R at 15 n.6.  In his EEOC charge, Plaintiff states that his last date of discrimination was September 1, 2023.  *See* EEOC Charge.  In his objections, Plaintiff claims his final rejection was on December 6, 2023, *see* Objs. ¶ 5.  Regardless of which date is correct, a new EEOC charge alleging sexual orientation discrimination under Title VII or disability discrimination under the ADA would be untimely.  The Court, thus, overrules this objection.

Fifth, Plaintiff argues that his NYSDHR complaint, filed on an unspecified date after the EEOC dismissed his initial charge,[3] renders his federal sexual orientation and disability

---

[2] Cases premised on the overlap between racial and national origin discrimination are inapposite.  *See* Objs. ¶ 4 n.2 & n.3.

[3] The FAC does not specify when his NYSDHR complaint was filed.  *See* FAC ¶ 21 n.2; *see also* Objs. ¶ 6. Moreover, neither the FAC nor Plaintiff's briefing argues that bringing a NYSDHR complaint satisfies the exhaustion requirement.  *See, e.g.*, FAC ¶ 21 n.2; Opp. Mem. at 3 n.6, ECF No. 37.  Although the Court typically does not consider new arguments raised for the first time in objections to an R&R, *see Forman v. Artus*, 211 F. Supp. 2d 415, 418 n.8 (S.D.N.Y. 2000); *see also Nambiar*, 158 F.4th at 359, because Plaintiff is proceeding *pro se*,

discrimination claims exhausted and timely. *See* Objs. ¶ 6; FAC ¶ 21 n.2. For a charge filed with the NYSDHR to be "deemed a charge filed with the EEOC for exhaustion purposes," the plaintiff "must have indicated that she wished her NYSDHR charge to be a 'dual filing' with the EEOC." *Pustilnik v. Hynes*, No. 96 Civ. 3989, 1998 WL 813411, at \*4 n.5 (E.D.N.Y. July 21, 1998). Plaintiff does not allege that he received a right to sue letter encompassing a federal charge of sexual orientation and disability discrimination. *See* FAC ¶¶ 21 n.2, 43 (stating that his lawsuit is based on a right to sue letter from the initial EEOC charge); *see Newsome v. Berman*, 24 F. App'x 33, 34 (2d Cir. 2001) ("The right to sue letter is a necessary prerequisite to file suit."); *Canty v. Wackenhut Corr. Corp.*, 255 F. Supp. 2d 113, 116 (E.D.N.Y. 2003) (dismissing a claim for failure to exhaust where the complaint stated that a charge was filed but not that the plaintiff obtained a right to sue letter). However, because bringing a NYSDHR charge may, in some circumstances, exhaust Title VII claims, *see Sworn v. W. New York Children's Psychiatric Ctr.*, 269 F. Supp. 2d 152, 158 (W.D.N.Y. 2003), it is possible that Plaintiff could demonstrate that his federal sexual orientation and disability claims were exhausted.

These claims, however, fail on the merits. The FAC does not support a minimal inference of discrimination because Plaintiff does not allege that Visa plausibly knew of his sexual orientation or disability. *See* FAC ¶ 87 (explaining that Visa does not collect or ask for self-reported identifies); R&R at 24 (holding that there are "no facts, however, that plausibly suggest that someone at Visa actually reviewed his resume/application" and "engaged in stereotyping and came to the conclusions" that Plaintiff is gay and has HIV and/or depression). Nor does Plaintiff provide non-speculative allegations that the selected candidates did not share these

---

the Court interprets his submissions "to raise the strongest arguments that they suggest" and, accordingly, considers the argument that filing an NYSDHR complaint exhausted his federal sexual orientation and disability discrimination claims, *Milano*, 2008 WL 4410131, at \*2.

characteristics—i.e., that they were not gay or disabled.  *See* R&R at 25. ("Absent facts identifying the successful candidates, it is impossible to know whether they were in the same protected groups as Plaintiff and impossible to make any inference that . . . sexual orientation or disability were a basis for rejecting Plaintiff from the jobs."); *id.* at 38 (concluding, for these reasons, that Plaintiff fails to state a sexual orientation and disability discrimination claim under state law).  However, because the claims may be timely and exhausted, the Court dismisses them without prejudice and not, as the R&R recommends, with prejudice, *see* R&R at 21.

B.  Disparate Treatment Claim

1.  Title VII

Plaintiff objects to the R&R's dismissal of his disparate treatment claims under Title VII arguing that: (1) the R&R applied a heightened pleading standard and resolved factual disputes against him; (2) he plausibly alleged he was qualified for the positions to which he applied; (3) his allegation that Visa applied job criteria inconsistently were sufficient to state a claim; (4) his failure to allege facts regarding comparators was not dispositive; and (5) his allegations regarding Visa's DEI policies were sufficient to raise a minimal inference of discriminatory motive.  *See* Objs. ¶¶ 7–11.  Reviewing *de novo*, the Court overrules these objections.  For several reasons, Plaintiff has not plausibly alleged a disparate treatment claim.

As an initial matter, the R&R applied the correct standard to Plaintiff's Title VII disparate treatment claims.  *See* R&R at 22–23 (requiring correctly that the complaint give "plausible support to a minimal inference of discriminatory motivation" (quoting *Littlejohn*, 795 F.3d at 311)).

The R&R also properly concluded that Plaintiff did not adequately plead that Visa decisionmakers knew of his race and religion.  *See* R&R at 23–24.  Plaintiff speculates that

11

decisionmakers inferred his various protected characteristics based on his "name and other cues in [his] application and linked social media." Objs. ¶ 7. But even if Visa could guess Plaintiff's gender based on his name, his application materials are insufficient to establish that Visa plausibly knew, for example, his religion or his race. Plaintiff concedes that "Visa does not use self-reported identities . . . in hiring," and "no one involved in the recruiting process, such as recruiters or hiring teams, has access to" information about an applicant's identities. FAC ¶ 87. Therefore, because Plaintiff has not plausibly alleged that Visa knew his religion or race when it decided not to interview him, he has not stated a claim for discrimination on those grounds. *See Giurca v. Bon Secours Charity Health Sys.*, No. 23-200, 2024 WL 763388, at *1 (2d Cir. Feb. 26, 2024) (affirming dismissal of a discrimination claim because the plaintiff "does not allege that the [defendants] were aware" of his protected characteristics); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005) ("[A] defendant's discriminatory intent cannot be inferred, even at the *prima facie* stage, from circumstances unknown to the defendant.").

Next, Plaintiff insists that he was plausibly qualified for each of the 16 roles. *See* Objs. ¶ 8. But his FAC admits that he did not meet the required and preferred qualifications for three of the roles. *See* FAC ¶ 112. For example, two of the jobs had residency requirements that he did not meet. *Id.* ¶¶ 113, 135, 137. The third job stated a preference for candidates with fluent Spanish or Portuguese, and Plaintiff "admit[edly] . . . did not include language proficiency in his resume." *Id.* ¶¶ 119, 124. He contends that the geographic residency and language proficiency requirements that led to those rejections are a pretext for discrimination. *See* Objs. ¶ 9. But Plaintiff merely asserts the existence of these requirements, which are generally considered "legitimate, non-discriminatory reasons on which to base a hiring decision." R&R at 29–30 (citing *Idlisan v. N.Y. State Dep't of Tax & Fin.*, No. 12 Civ. 1787, 2014 WL 3888279, at *8 (N.D.N.Y. Aug. 7, 2024);

*Cooper v. Conn. Pub. Def.'s Off.*, 480 Supp. 2d 536, 546–47 (D. Conn. 2007)). Although "a court does not normally consider an employer's legitimate business reason for a hiring decision on a motion to dismiss," R&R at 30, when these are legitimate requirements and Plaintiff concedes that he did not meet those requirements, absent other evidence of discrimination, his complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557 (alteration adopted) (citation omitted).

In considering the remaining jobs, Plaintiff states that the "[l]ack of comparator detail is not fatal" to his claims. Objs. ¶ 10. The Court disagrees. Even though the motion to dismiss standard is lenient, absent direct evidence of discrimination, Plaintiff "must still identify at least one comparator to support a minimal inference of discrimination" at the pleading stage. *Goodine v. Suffolk Cnty. Water Auth.*, No. 14 Civ. 4514, 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017); *see Moss v. Bd. of Educ. of Sachem Cent. Sch. Dist.*, No. 22 Civ. 6212, 2024 WL 3328637, at *7–9 (E.D.N.Y. July 8, 2024), *aff'd*, No. 24-9096, 2025 WL 946417 (2d Cir. Mar. 28, 2025).

For eight of the thirteen positions for which Plaintiff was plausibly qualified, Plaintiff either did not identify the successful candidate who received the role (if any) or did not allege their demographics such that an inference of discrimination could reasonably be drawn. *See* FAC ¶¶ 73–74 & n.26, 155, 168, 179.[4] For the five remaining positions, four of the allegedly selected candidates shared Plaintiff's race, four shared his gender, and three shared both his race and gender. *See* FAC ¶ 74 n.26; *see also* R&R at 4, 25–29 (noting that "[i]t appears [Plaintiff] engaged in guesswork" concerning the demographic characteristics of hired candidates). Without

---

[4] For one role, Plaintiff speculates that "two engineering degrees and Visa's overall demographics imply that [the selected candidate is] a straight Asian male." FAC ¶ 168. For another, Plaintiff admits that he does not know the successful candidate but speculates that she was a woman because there is a "clear and insidious trend that Visa has been promoting women with irrelevant experiences in healthcare and marketing into senior partnership roles." *Id.* ¶ 155. Given Plaintiff's admission that he does not know who was hired for the job, *id.* ¶¶ 155, 168, the Court does not credit as true his purely speculative allegations as to the demographics of the selected candidates.

identifying similarly situated individuals outside of his protected class, Plaintiff has not raised a minimal inference of discrimination for the vast majority of positions to which he applied.

As to the one role filled by a woman and the other filled by a Hispanic man, "Plaintiff offers no allegations suggesting [Visa's] selection of the [] candidates, and not him, had any nexus whatsoever" to his protected characteristics. *Moss*, 2024 WL 3328637, at *8. His allegations are "missing the connective tissue that links h[is] protected status to the alleged failure to hire." *Id.* (citation omitted). Allegations that Visa adopted certain DEI policies do not raise a minimal inference of discrimination. *See* Objs. ¶ 10. As the R&R properly concluded, without more, "an employer's [general] commitment to diversity . . . is not proof of discriminatory motive with respect to any specific hiring decision," particularly where, as here, many of the jobs to which Plaintiff applied were allegedly filled by people who shared his protected characteristics and where the FAC does not explain how the policies were implemented with respect to selecting candidates for interviews and hiring. R&R at 27–28 (internal quotation marks and citation omitted); *see id.* at 28 ("Indeed, many of the positions to which Plaintiff applied were allegedly filled by men or persons alleged to be White, undercutting his suggestion that Visa was tipping the scales in favor of Black and Hispanic applicants or women through its DEI initiatives.").

The Court, therefore, overrules Plaintiff's objections and adopts the R&R as to Plaintiff's Title VII disparate treatment claims.

### 2. NYSHRL and NYCHRL

Plaintiff argues that Judge Parker erred in dismissing his NYSHRL and NYCHRL claims "for the same reasons" as his Title VII claim, R&R at 38, because those statutes are more plaintiff-friendly than Title VII. *See* Obj. ¶¶ 15–16. Reviewing *de novo*, the Court overrules this objection. The R&R outlined the more lenient NYSHRL and NYCHRL legal standards before concluding

14

that Plaintiff's allegations were nonetheless "insufficiently pleaded" under those standards.  *See* R&R at 37–38.  Where Plaintiff relies on the same factual allegations for all claims, a court may properly dismiss the state and city law claims for the same reason as the federal claims, as long as it applies the proper legal standard to each claim.  *See, e.g.*, *Mumin v. City of New York*, 760 F. Supp. 3d 28, 55–56 (S.D.N.Y. 2024).  There is no indication that Judge Parker did not apply the more generous NYSHRL and NYCHRL standards to Plaintiff's allegations.[5]  Plaintiff does not otherwise object to the R&R's conclusion that he fails to plead NYSHRL and NYCHRL claims, and the Court finds no clear error in the R&R's reasoning or conclusion.  *See Nambiar*, 158 F.4th at 360.

### C.  Hostile Work Environment Claims

Plaintiff objects to the dismissal of his hostile work environment claim.  *See* Objs. ¶¶ 12–14; R&R at 35–37.  He argues that hostile conduct "may attach to gatekeeping conduct."  Objs. ¶ 13.  But someone who was never interviewed, let alone hired, cannot state a hostile work environment claim.  "It is inherent in the definition of a . . . hostile work environment . . . that the person against whom the hostility is directed must be in an employment relationship with the employer."  *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999); *see Wang v. Phx. Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2013) (holding that an employer "logically cannot discriminate against a person in the 'conditions and privileges of employment' if no employment relationship exists").  Plaintiff has not alleged any plausible employment relationship.  *See Areu v. Fox News Network, LLC*, No. 20 Civ. 8678, 2021 WL 4124226, at *9 (S.D.N.Y. Sep. 9, 2021) (requiring the plaintiff, at minimum, to demonstrate that

---

[5] For example, the R&R recognized that Plaintiff's sexual orientation and disability discrimination claims need not be exhausted under state and city law and, therefore, separately analyzed these claims.  *See* R&R at 37–38.

she was hired by the putative employer); *see generally* FAC.  Therefore, reviewing *de novo*, the Court overrules Plaintiff's objections to the dismissal of his hostile work environment claim.

D.  Disparate Impact Claim

The R&R concluded that Plaintiff's disparate impact claim fails.  *See* R&R at 40–42. Plaintiff contends that: (1) the R&R "improperly treats [his] alternate theories" of disparate treatment and disparate impact as "mutually exclusive," Objs. ¶ 17; and (2) he sufficiently alleged "adverse outcomes" and "adverse effects" from "facially neutral practices," *id.* ¶¶ 18–19. Reviewing *de novo*, the Court overrules these objections.

Plaintiff has not plausibly alleged a disparate impact claim.  First, other than referencing "DEI policies" in general, *e.g.*, FAC ¶¶ 59, 65, 77, 188–89, Plaintiff does not specify which policy he is challenging under this theory of liability.  *See Powell v. Am. Gen. Fin., Inc.*, 310 F. Supp. 2d 481, 487 (N.D.N.Y. 2004) ("To establish a *prima facie* case under a disparate impact theory, a plaintiff must identify a specific policy or practice which the defendant has used to discriminate."). Second, Plaintiff states that "Defendant's DEI policies are not facially neutral," FAC ¶ 189, but facial neutrality is required to plead a disparate impact claim.  *See Housing Rights Initiative v. Compass Inc.*, No. 21 Civ. 2221, 2023 WL 2989048, at *1 (S.D.N.Y. Apr. 18, 2023).  Third, Plaintiff has not offered "factual allegations supporting the existence of a plausible disparity between members and non-members of a protected group" caused by any Visa policies.  *Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 215 (E.D.N.Y. 2025).  Plaintiff's statistic, offered without citation or explanation, that the representation of White men at Visa "dropped from 23% to under 20%" from 2020 to 2023 is insufficient, FAC ¶ 9, because Plaintiff offers no information about the applicant pool or the qualified population in the labor market.  *See Malave v. Potter*, 320 F.3d 321, 325 (2d Cir. 2003); *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 210–11 (2d Cir. 2020)

16

(holding that even at the pleading stage, the "statistical analysis must, at the very least, focus on the disparity between appropriate comparator groups"); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) ("Allegations which contend only that there is a bottom line racial imbalance in the workforce are insufficient."). Because Plaintiff's complaint amounts to no more than a general allegation of racial imbalance, Plaintiff has not plausibly alleged that any of Visa's policies caused a disparate impact. *See Moss*, 2025 WL 946417, at *2.

E.   Section 1981 Claim

To state a claim under 42 U.S.C. § 1981, "a plaintiff must initially plead . . . that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). The R&R concluded that Plaintiff fails to state a claim under § 1981 arising out of his exclusion from three of Visa's programs and competitions. *See* R&R at 43–45. Reviewing *de novo*, overrules each of Plaintiff's objections to the portion of the R&R concerning his § 1981 claim. *See* Objs. ¶¶ 20–25.

First, Plaintiff argues that the R&R "improperly resolve[d] a disputed factual issue" as to whether sex or race was the but-for cause of his exclusion from the programs. *See id.* ¶ 20. The R&R did not resolve any factual issue. Rather, the R&R concluded that Plaintiff's claim of race discrimination was not plausible because the FAC establishes that She's Next and IFundWomen were programs "delineated by gender, not by race as contemplated by Section 1981." R&R at 43. The Court agrees with the R&R. *See, e.g.*, FAC ¶ 56 n.15 (quoting Visa's statement that "[t]ogether, Visa in collaboration with IFundWomen, have been creating access to funding and education for women-owned small businesses around the world through the Visa She's Next Grant Program."). Even if some of IFundWomen's grants were awarded "to support Black women-owned businesses," FAC ¶ 56; *id.* n.15, "gender, not race, appears to have been the primary barrier

17

to [Plaintiff's] participation in these programs." R&R at 44. Moreover, Plaintiff's complaint does not allege "what the [program] requirements [were] for getting a grant" and "whether [he] [met] them." *Samuels v. New York City*, No. 23 Civ. 10045, 2024 WL 3742544, at *2 (S.D.N.Y. Aug. 9, 2024); *see* R&R at 44. Absent such allegations, Plaintiff has not plausibly demonstrated that a race-based exclusion is what prevented him from applying to the programs. *See* Objs. ¶ 20.

Second, Plaintiff claims he was excluded from the Visa Everywhere Initiative ("VEI") not because he was prevented from applying but because approximately "75% of identified VEI winners were non-White." Objs. ¶ 21 (citing FAC ¶¶ 56–57). "However, the fact that [the eventual] grant *recipients* were allegedly mostly non-White does not mean that Plaintiff was not able to *apply* because of his race," particularly where Plaintiff admits that many grant recipients were, in fact, White. Resp. at 18–19 (citing *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 212–13 (S.D.N.Y. 2017)); *see also* FAC ¶¶ 56–57. Moreover, as the R&R noted, Plaintiff "fails to include any facts about the criteria for the program, why his companies qualified for the program, or that he applied for and was rejected from the program." R&R at 44. Because Plaintiff does not allege plausible facts "demonstrat[ing] that [he was] able and ready to apply, but a discriminatory policy prevent[ed] [him]" from applying to VEI or that he, in fact, applied to VEI, his claim must be dismissed. *Do No Harm v. Pfizer, Inc.*, 126 F.4th 109, 118 (2d Cir. 2025).

Plaintiff also contends that the R&R failed to consider that "Visa started an entrepreneurship center in majority-Black Atlanta as part of its DEI strategy." Objs. ¶ 22 (citing FAC ¶¶ 47, 58). Reviewing *de novo*, the Court overrules this objection. Plaintiff pleads no facts raising a reasonable inference that he was excluded from the center because of his race. *See also* FAC ¶ 136 n.45 (recognizing that Visa "started an Innovation Studio in Tel Aviv and other global cities").

18

Finally, with respect to the Visa credit card agreement and Developer Platform Terms, the Court reviews *de novo* Plaintiff's objections and overrules them. *See* Objs. ¶¶ 23–24. Plaintiff "does not allege that Visa ever altered any terms via-à-vis him or denied him a credit card, much less on the basis of his race or ethnicity." R&R at 45. Therefore, Plaintiff fails to plausibly allege that he was excluded from any contract "with regard to the Developer Platform or credit card offerings" because of his race. *Id.*

F.    Motion to Strike

Reviewing *de novo*, the Court grants in part and overrules in part Plaintiff's objections to the R&R's recommendation to strike certain allegations in his 248-paragraph complaint. *See* R&R at 48 (recommending striking allegations referring to Visa's relationship with Black Lives Matter ("BLM") and BLM's alleged links to Hamas, accusing Visa of antitrust violations and monopolist practices, and describing political corruption).

Although motions to strike pleadings as impertinent or immaterial are "generally disfavored," they are nonetheless "within the district court's sound discretion." *Walters v. Performant Recovery, Inc.*, 124 F. Supp. 3d 75 (D. Conn. 2015) (citation omitted); *see also Brown v. Maxwell*, 929 F.3d 41, 51 n.42 (2d Cir. 2019). The Court agrees with Judge Parker that most of the allegations Visa moves to strike[6] have "no bearing on the issues in the case" and that permitting the allegations to stand would "result in prejudice" to Visa. *Roe*, 151 F. Supp. 2d at 510 (citation omitted). The Court finds that the inclusion of these extraneous, redundant, and irrelevant

---

[6] Visa moves to strike the following sets of allegations from Plaintiff's complaint: (1) allegations regarding antitrust violations and McKinsey & Company, which is not involved in this litigation (FAC ¶¶ 61–67); (2) allegations regarding Visa's political activities, Black Lives Matter ("BLM"), and BLM's alleged position on Hamas (*id.* ¶ 76, 78 & n.29); (3) allegations regarding individuals hired by Visa for positions Plaintiff did not apply for (*id.* ¶¶ 164, 167); (4) allegations that Visa is a "monopolist" engaged in antitrust violations (*id.* ¶¶ 219–20, 227); and (5) further allegations of antitrust violations and employment history of an individual who was not hired for any position Plaintiff applied for (*id.* ¶ 223). *See* Mem. at 22.

allegations places an unjustified burden on Visa to evaluate and respond to these allegations. *See* Mem. at 23 (citing 5 Wright & Miller, Federal Practice & Procedure § 1281 (4th ed.)).

First, Plaintiff argues that his accusations of antitrust violations should not be stricken because they demonstrate that Visa faces "heightened regulatory and enforcement scrutiny," which, in turn, explains why Visa "emphasized DEI initiatives." Objs. ¶¶ 27–30. The Court disagrees. The antitrust and monopoly allegations are too attenuated from Plaintiff's discrimination claims and risk confusing the issues. Therefore, the Court overrules this objection and strikes paragraphs 61 through 67, 219 to 220, 223, and 227 from the FAC.

Second, Plaintiff argues that his allegations regarding Visa's connection to BLM "explain how Visa's DEI commitments were operationalized into exclusionary practices." *Id.* ¶ 31–32. Not so. Visa's unspecified relationship with BLM, and BLM's various political positions, are not relevant to Visa's hiring decisions with respect to Plaintiff, and none of these allegations come close to describing how allegedly exclusionary hiring practices were operationalized. The Court concludes that these allegations "serve[] no purpose except to inflame the reader." *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 512 (S.D.N.Y. 2013) (citation omitted). Therefore, the Court overrules Plaintiff's objection and strikes paragraphs 76, 78 & n.29 from the FAC.[7]

Third, the Court agrees with Plaintiff that any information relevant to comparators should not be stricken and that paragraphs 164 through 167 relate, at least in part, to a potential comparator. *See* Objs. ¶ 36. The Court thus grants Plaintiff's objection in part. However, as Plaintiff acknowledges, a "targeted redaction" may be appropriate. *Id.* The Court strikes the allegations to the extent they allege "corruption concerns" and discuss foreign policy because those allegations are irrelevant, immaterial, and prejudicial to Visa. Specifically, the Court strikes the

---

[7] The R&R recommended striking paragraph 77. *See* R&R at 48. However, Visa did not originally move to strike this paragraph. *See* Mem. at 22. Therefore, the Court does not strike it.

reference to "corruption concerns" in paragraph 164 and strikes all of paragraph 167, but does not strike paragraphs 165 and 166.  Therefore, the Court adopts the R&R in part.  *See* R&R at 48.

### CONCLUSION

For the foregoing reasons, the Court OVERRULES Plaintiff's objections to the R&R and ADOPTS the R&R, except as otherwise stated in this order.  Plaintiff's claims are dismissed without prejudice, except for his Title VII hostile work environment claim, which is dismissed with prejudice, and his Title VII, NYSHRL, and NYCHRL retaliation claims, which may proceed.  The Court also strikes the following allegations from Plaintiff's FAC:  ¶¶ 61–67, 76, 78 & n.29, 164 (in part), 167, 219–20, 223, and 227.  Should Plaintiff decide to continue to pursue the claims dismissed without prejudice, by **April 2, 2026**, he shall file an amended complaint, along with a redline showing all differences between the original and revised filing.  Any amended complaint shall omit the stricken material and address all infirmities described in the R&R and this order.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 32.

SO ORDERED.

Dated: March 12, 2026
New York, New York

_____
ANALISA TORRES
United States District Judge

21